IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASSOCIATION OF THE UNITED STATES ARMY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3: 03-206J |
| AEGIS CONSULTING GROUP, INC., and THE ABERJONA PRESS, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

GIBSON, J.

This case comes before the Court on Association of the United States Army's (hereinafter "Plaintiff") Motion to Compel Defendants' Production of Documents (Document No. 16), Aegis Consulting Group, Inc., and The Aberjona Press' (hereinafter "Defendants") Cross Motion to Compel (Document No. 18), and Plaintiff's Brief in Opposition to Defendants' Cross Motion to Compel (Document No. 22). Upon consideration of the record in the case *sub judice*, a telephonic conference on the above-listed motions, and pursuant to Federal Rules of Civil Procedure 26 and 37, the Court shall grant in part and deny in part Plaintiff's Motion to Compel Defendants' Production of Documents, and the Court shall grant in part and deny in part Defendants' Cross Motion to Compel for the following reasons.

## JURISDICTION AND VENUE

Jurisdiction is proper in the United States District Court for the Western District of Pennsylvania under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b). This Court also has jurisdiction pursuant to 28 U.S.C.A. § 1332 as there is complete diversity between the Plaintiff, a citizen of the District of Columbia, and Defendants, who are citizens of Pennsylvania.

Additionally, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and the Defendants are subject to personal jurisdiction within this judicial district. The Defendants' principal places of business are located within the Western District of Pennsylvania, and a substantial part of the events giving rise to Plaintiff's claim occurred in the Western District of Pennsylvania.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a private educational organization that supports active Army members, retirees, and family members. (Document No. 1). One of the Plaintiff's distinguishing markers is that since approximately 1950, it has used a logo that incorporates the phrase "Association of the United States Army" ("AUSA") in a circular pattern around a depiction of an eagle holding a shield and olive branch. *Id.* Throughout the years, the Plaintiff has provided "professional education and information programs" in an effort to foster support for the Army. *Id.* One of the informational products and services provided by the Plaintiff is the distribution of the *Army* magazine. *Id.* Another product is the *AUSA News* publication provided by the Plaintiff. *Id.*

Defendant, Aegis Consulting Group, Inc. (hereinafter "Aegis") is a publishing house, with its principal place of business located in Bedford, Pennsylvania. (Document No. 1). The Defendant, The Aberjona Press (hereinafter "Aberjona") is a division of Aegis. *Id.* Collectively, Aegis and Aberjona (hereinafter "Defendants") publish historical and military professional literature. *Id.*

On or about May 1, 2002, the above parties outlined a marketing agreement and publishing agreement (hereinafter "Outline"). (Document No. 1). Under the terms of this agreement, the Plaintiff and the Defendants "addressed the parties' joint marketing efforts and publishing efforts."

*Id.*¹ For example, Plaintiff agreed to permit the use of its name as a sponsor of AUSA books published by Defendants. *Id.* The Plaintiff also agreed to provide a "hotlink" from its website to Defendants' website. *Id.* Additionally, the Plaintiff agreed to provide space in its publications for book reviews and to list Aegis book discounts as part of its member benefits. *Id.* Finally, the Plaintiff was to provide manuscripts from its holdings for publication with Defendants. *Id.*

The Defendants, on the other hand, agreed to publish, distribute and provide fulfillment for "AUSA books."² (Document No. 1). Defendants also agreed to pay the Plaintiff a 3% royalty on each AUSA book that was sold. *Id.* Moreover, the Defendants' website was to likewise provide a "hotlink" and artwork for the Plaintiff's website. *Id.* The Defendants further agreed to offer a 20% discount for all AUSA members. *Id.*

On or about May 24, 2002, the parties entered into a signed Memorandum of Understanding ("MOU") regarding the above-mentioned publishing agreement. (Document No. 1). Under the terms of this signed agreement, the Plaintiff agreed to advance funds in the amount of $50,000.00 to Defendants for the publication of books "if specific conditions are met". *Id.* This advance was to be made in increments, with each increment to be in two installments after each

---

¹The Defendants assert that the "topics addressed in the Outline . . . are not limited to the parties' joint marketing efforts and publishing efforts. According to Defendants, the Outline specifically obligates Plaintiff, *inter alia*, to offer specialized German manuscripts in Plaintiff's ownership to Defendants for publication and to provide manuscripts from its holdings of unpublished official studies concerning military history to Defendants for publication." (Document 4, ¶ 27).

²The Defendants specify in their Answer and Counterclaim that part of the publishing efforts understood between the parties was that the Plaintiff promised to provide over 151 manuscripts, including "'The Airborne Series,' 'The Combat Leaders Series,' and the 'German Tactical Studies Series,' as well as volumes of combat studies written for the German army for instructional purposes in the 1950's." (Document No. 4, ¶ 36).

3

of four books was published by the Defendants.³ *Id.*

The MOU also provided that the Plaintiff would review each book, advertise books on its website, provide a "hotlink" to Defendants for ordering, and the Plaintiff would publicize its relationship with Defendants. (Document No. 1). Additionally, the MOU provided that the Defendants would have temporary use of the advancement made by the Plaintiff. *Id.* In return, the Defendants were to publish four AUSA owned books during a twelve-month period following the advancement. *Id.* Defendants were also to repay the advancement, as well as pay the Plaintiff a 15% royalty on all AUSA-owned books that the parties agreed would be published by the Defendants. *Id.*

The Defendants further contend that a third document creates the entire contract between the parties. (Document No. 25). Specifically, the Defendants argue that the three documents which comprise the contract are the Outline, the MOU, and the May 8, 2001 letter from General Stroup to the Defendants. *Id.* at p. 9. In this letter, the Defendants claim that General Stroup expressed that "he had procured over 100 never before seen manuscripts written either in combat or shortly thereafter by historical research teams," and the Defendants contend that these manuscripts are central to the contested issues between the parties in the case *sub judice*. *Id.*

Plaintiff alleges that Defendants have failed to publish any AUSA books as per the MOU. (Document No. 1). Additionally, the Plaintiff asserts that the Defendants have not repaid the $50,000.00 advancement, nor have Defendants paid royalties owed to the Plaintiff. *Id.* Moreover, the Plaintiff states that the Defendants continue to use its logo without the permission of the

---

³The Defendants state that they "agreed to the repayment of the $50,000.00 advance at specified intervals after Defendants' publication of agreed-upon books." (Document No. 4, ¶ 49). However, the Defendants argue that the Plaintiff "never provided any of the promised manuscripts for publication by Defendant[s]." *Id.*

Plaintiff. *Id.*

Conversely, the Defendants assert that the first manuscript provided by the Plaintiff for publication was not covered under the terms of the Outline or the MOU. (Document No. 4). Furthermore, the Defendants claim that they intended to publish one of the four "covered" manuscripts, however, the Plaintiff did not provide it to the Defendants. *Id.* Consequently, the Defendants argue that Plaintiff did not fulfill its contractual objections under the terms of the contract, and as such, Defendants' duty to perform was not triggered.[4] *Id.*

On or about September 11, 2003, the Plaintiff filed a Complaint with this Court, outlining the following claims against the Defendants: Count I- Breach of Contract (the Memorandum of Understanding); Count II- Breach of Contract (the Outline Agreement); Count III- Unjust Enrichment; Count IV- Promissory Estoppel; Count V- Conversion; Count VI- False Designation of Origin/Unfair Competition; and Count VII- Common Law Trademark Infringement and Unfair Competition. (Document No. 1). Based upon these claims, the Plaintiff seeks a permanent injunction enjoining Defendants from marketing any material with the AUSA mark. *Id.* The Plaintiff also seeks a decree ordering the destruction of any materials in Defendants' possession bearing the AUSA mark, or variation thereof. *Id.* Finally, Plaintiff requests a judgment against the Defendants for "(a) monetary damages, including [D]efendants' profits, (b) treble damages, (c) punitive damages, (d) costs and prejudgment interest, and (d) attorneys' fees." *Id.*

On or about November 5, 2003, the Defendants filed an Answer and Counterclaim setting forth the following claims against the Plaintiff: Count I- Breach of Contract; Count II- Unjust

---

[4] The Defendants admit they have not repaid the Plaintiff $50,000.00, but they also assert that they do not have "any obligation to 'return' the [money] to Plaintiff", as the Defendants are "willing and able to publish the 151 manuscripts" that Plaintiff promised to provide to them. (Document No. 4, ¶ 71).

Enrichment; Count III- Promissory Estoppel; Count IV- Fraudulent Misrepresentation; and Count V- Breach of the Implied Covenant of Good Faith and Fair Dealing. (Document No. 4). Accordingly, the Defendants request "monetary damages, punitive damages, plus interest, costs, expenses, attorneys' fees, and such other relief as this [C]ourt deems just and proper." *Id.*

On February 28, 2005, fact discovery in the case *sub judice* was to be complete. (Document No. 13). On April 28, 2005, the Plaintiff filed a Motion to Compel Defendants' Production of Documents. (Document No. 16). Specifically, the Plaintiff asserts that the Defendants have failed to comply with Federal Rule of Civil Procedure 26, and request this Court to order Defendants to produce the following documents:

1. all documents that support and were used to create the schedules Aegis produced in response to requests for financial information, including but not limited to Quickbooks printouts, and other documents responsive to AUSA's Document Request Nos. 7, 9, 15, 16, 19 and 21;

2. all documents identified in the [depositions of Patti Bonn and Keith Bonn, Aegis' principles] and specifically:
   a. Aegis' Business Plan, including drafts and versions;
   b. the prospectus that Aegis sent to potential investors;
   c. all print ads for the Guderian book, From the Normandy to the Ruhr, including the ad from the fall of 2004;
   d. Aegis' calculation of royalty income;
   e. all written agreements between Aegis and any author or entity with respect to royalty payments;
   f. all invoices related to printing all Aegis' books;
   g. sales records from Aegis' sales of books, such as invoices, credit card receipts and summary lists of sales made at conventions;
   h. all documents that relate to any and all loans to Aegis;
   i. all copies of Aegis' bank statements for the years 2001, 2002 and 2003;
   j. all copies of any shareholder agreements of Aegis' shareholders; and
   k. all documents related to Aegis' book marketing and advertising;

3. supplemental responses to Document Request Nos. 6 and 8 and all relevant responsive documents; and

4. all relevant documents responsive to Document No. 14.

(Document No. 16). Consequently, the Defendants responded to Plaintiff's motion by arguing that Plaintiff's requests are too broad, overly burdensome, and the materials requested are irrelevant. (Document No. 20).

In their own cross motion, the Defendants request that this Court compel the Plaintiff to "produce copies of the 'over 100 never before seen manuscripts' referred to in [the] letter of 8 May 2001". *Id.* In response, the Plaintiff argues that while they will permit Defendants' attorneys to review the manuscripts, it will not permit its competitor to review these documents because Plaintiff fears that the Defendants, as competitors, will seek out these manuscripts which took Plaintiff considerable time and money to secure. (Document No. 25).

The Court addresses each motion in turn.

## STANDARD

The Federal Rules of Civil Procedure provide broad guidelines for discovery of "any matter, not privileged which is relevant to the subject matter involved in the pending action, . . . ." Fed.R.Civ.P. 26(b)(1). Furthermore, Federal Rule 34 sets forth the procedure governing requests for production of documents. Rule 34 requires that a party served with a document request either produce the requested documents, or the party served must state a specific objection for each item or category to which he objects. If the party served fails to respond adequately to a document request, the serving party may file a motion to compel under Rule 37(a). Fed.R.Civ. P. 34(b), 37(a)(1)(B).

**Plaintiff's Motion**

Initially, the Court determines that the financial documents sought by the Plaintiff are relevant and reasonably calculated to lead to the discovery of admissible evidence. Specifically, this case arises out of claims, including but not limited to, an alleged breach of contract, and claims that certain books were published and royalties improperly received by Defendants. (Document No. 17). Consequently, delving into the financial records of the Defendants is relevant to both the Plaintiff's claims and the Defendants' counterclaims. These documents address the number of books allegedly sold by the Defendants, the royalties allegedly due to the Plaintiff, and whether certain books were sold by the Defendants that incorporated the use of Plaintiff's logo. The Defendants' financial documents are also relevant to establish the damages claimed by Defendants. Moreover, the Court observes from the record that Plaintiff has narrowed its request for discovery to specific documents outlined in its proposed order so that the discovery request is not overly broad. (Document No. 16).

The Court also observes that Patti Bonn and Keith Bonn, Aegis' principles, identified documents during their deposition testimonies as existing documents. (Document No. 17, Exhibit B). For example, on January 31, 2005, Patti Bonn testified that in preparation of litigation she prepared schedules of past royalty payments, books sales, publishing costs and projection for future sales.[5] *Id.* Additionally, Patti Bonn testified that the records she relied upon to generate the schedules are currently maintained by Aegis. *Id.* Accordingly, the Court finds that it would not be unduly burdensome for the Defendants to produce the underlying records for the Plaintiff as

---

[5] The Bonns also testified that these documents were not prepared in the course of Aegis' regular business practices. *Id.*

they already exist.

Accordingly, the Court determines that pursuant to the liberal discovery standards set forth in Rule 26, Plaintiff is entitled to obtain the above-requested documents, and the Court shall grant Plaintiff's Motion to Compel in that Defendants must provide the discovery requests outlined in Plaintiff's proposed order; however, the Court shall deny Plaintiff's Motion to Compel to the extent that Defendants are instructed to provide documentation only for the years 2000, 2001, 2002 and 2003, excluding discovery request 2.i. wherein the Defendants shall provide bank statements for the years 2001, 2002 and 2003.

**Defendants' Cross Motion**

In their motion, the Defendants request that the Court compel the Plaintiff "to produce copies of the 'over 100 never before seen manuscripts' referred to in its letter of 8 May 2001". (Document No. 20). Additionally, Defendants argue that the May 8th letter is part of the contractual agreement between the Plaintiff and Defendants. *Id.* In that letter, Defendants claim that certain manuscripts were identified by the Plaintiff which would ultimately be provided to the Defendants for publication. *Id.* However, since that letter was provided to the Defendants, the Defendants have "a good faith belief that the Plaintiff may not have had those possessed manuscripts, and/or they were not of publishable length." (Document No. 25, p. 10).

Conversely, the Plaintiff contends that the May 8th letter was not part of the contract agreement between the parties. (Document No. 25, p. 10). Moreover, the Plaintiff claims that Aegis already has in its possession one of the "book form manuscripts", and the Plaintiff has "produced [for the Defendants] a list of [fifty-one] manuscripts that are copyright protected". *Id.* As to the remaining manuscripts, the Plaintiff asserts that they are not copyright protected, they

9

are in the public domain, and they are in AUSA possession. *Id.* However, the Plaintiff hesitates to reveal to its competitor, the Defendants, the location of those manuscripts and the substantive nature of those manuscripts as the Plaintiff has expended a great deal of time and effort in obtaining them. *Id.* Thus, the Plaintiff has attempted to comply with the Defendants' request by producing a listing of all the manuscripts pursuant to the confidentiality agreement already in place. *Id.* Moreover, the Plaintiff would permit Defendants' counsel to inspect the manuscripts. *Id.*

The Court determines that since part of Defendants' contention in its motion is whether the Plaintiff actually possessed those manuscripts and the publishable length of those manuscripts, the Plaintiff's willingness to have Defendants' counsel review those manuscripts seems a reasonable alternative to producing all of the manuscripts in their entirety. Additionally, the Court determines that granting Defendants' Cross Motion to Compel to the extent that Defendants' counsel may inspect the manuscripts at Plaintiff's offices is appropriate since there remains a genuine issue of material fact as to whether the May 8th letter is part of the contractual agreement between the parties. Therefore, the Court shall grant the Defendants' Cross Motion to Compel such that Plaintiff shall make available for Defendants' counsel's review copies of the "over 100 never before seen manuscripts"; however, the Court shall deny the Defendants' Cross Motion to Compel to the extent that only Defendants' counsel will be permitted to review those documents at the Plaintiff offices, and such review will adhere to the terms of the confidentiality agreement existing between the parties.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASSOCIATION OF THE UNITED STATES ARMY,<br><br>        Plaintiff,<br><br>v.<br><br>AEGIS CONSULTING GROUP, INC., and THE ABERJONA PRESS,<br><br>        Defendants. | Civil Action No. 3: 03-206J |

## ORDER

**AND NOW**, this 21st day of November, 2005, upon consideration of Plaintiff's Motion to Compel (Document No. 16), Defendants' Cross Motion to Compel (Document No. 18), and the record in the case *sub judice*, and pursuant to Federal Rules of Civil Procedure 26 and 37, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel is **granted** in part and **denied** in part, and that Defendants' Cross Motion to Compel is **granted** in part and **denied** in part.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel is **granted**, and Defendants are instructed to provide the Plaintiff with the following documents:

1. all documents that support and were used to create the schedules Aegis produced in response to requests for financial information, including but not limited to Quickbooks printouts, and other documents responsive to AUSA's Document Request Nos. 7, 9, 15, 16, 19 and 21;

2. all documents identified in the [depositions of Patti Bonn and Keith Bonn, Aegis's principles] and specifically:

   a. Aegis' Business Plan, including drafts and versions;
   b. the prospectus that Aegis sent to potential investors;
   c. all print ads for the Guderian book, From the Normandy to the Ruhr, including the ad from the fall of 2004;
   d. Aegis' calculation of royalty income;
   e. all written agreements between Aegis and any author or entity with respect to royalty payments;

    f.    all invoices related to printing all Aegis' books;
    g.    sales records from Aegis' sales of books, such as invoices, credit card receipts and summary lists of sales made at conventions;
    h.    all documents that relate to any and all loans to Aegis;
    i.    all copies of Aegis' bank statements for the years 2001, 2002 and 2003;
    j.    all copies of any shareholder agreements of Aegis' shareholders; and
    k.    all documents related to Aegis' book marketing and advertising;

3. supplemental responses to Document Request Nos. 6 and 8 and all relevant responsive documents; and

4. all relevant documents responsive to Document No. 14;

furthermore, the Defendants shall provide these documents within *twenty days* of the date of this Court's Order; however, the Court shall **deny** Plaintiff's Motion to Compel to the extent that Defendants are instructed to provide documentation for the years 2000, 2001, 2002 and 2003, excluding discovery request 2.i. wherein the Defendants shall provide bank statements for the years 2001, 2002 and 2003;

**IT IS FURTHER ORDERED** that the Court shall **grant** the Defendants' Cross Motion to Compel such that Plaintiff shall make available at Plaintiff's offices for Defendants' counsel's review copies of the "over 100 never before seen manuscripts"; furthermore, the Plaintiff shall provide these manuscripts for review by Defendants' counsel within *twenty days* of the date of this Court's Order, however, the Court shall **deny** the Defendants' Motion to Compel to the extent that only Defendants' counsel will be permitted to review those documents at the Plaintiff offices, and such review will adhere to the terms of the confidentiality agreement existing between the parties.

BY THE COURT:

*[signature]*

United States District Judge
The Honorable Kim R. Gibson

cc: All counsel of record.